43 C.C.P.A.(Patents)
**In the Matter of the Application of
Russell J. GRAY.**

**Patent Appeal No. 6170.**

United States Court of Customs
and Patent Appeals.

Feb. 21, 1956.

Leonard L. Kalish, Philadelphia, Pa.,
for appellant.

Clarence W. Moore, Washington, D. C.
(S. W. Cochran, Washington, D. C., of
counsel), for Commissioner of Patents.

Before O'CONNELL, Acting Chief
Judge, and JOHNSON, WORLEY,
COLE and JACKSON, retired, Judges.

O'CONNELL, Acting Chief Judge.

This is an appeal from the decision of
the Board of Appeals of the United
States Patent Office affirming the final
rejection by the Primary Examiner of
the two remaining claims of appellant's
application, No. 120,641 for a patent on
a quick-detachable connector for fluid
lines, on the ground of lack of invention
over prior art. The appealed claims are
as follows:

"9. A hose coupler for quick-at-
tachable and quick-detachable con-
nection with a bevel-ended nipple
having a rearwardly facing coupler-
engaging shoulder, said coupler
comprising a generally tubular body
member having an axial bore there-
through communicating with a rear
end opening adapted to be connect-
ed to a hose and with a front end
opening adapted telescopically to re-
ceive said nipple, a guideway form-
ed in said body member transverse-
ly of said bore, a key slidable in
said guideway having an opening
defined by a margin and yieldably
biased to a locking position seating
said margin behind said shoulder
when the nipple is inserted through
said front end opening and the
bevel-end thereof engages said mar-
gin so as slidably to displace the
key, thereby to attach the body
member to the nipple, and means
for detaching the body member
from the nipple comprising a sleeve
surrounding the body member hav-
ing a fixed camming surface extend-
ing radially outwardly from its
front end portion, an internal
groove behind said camming sur-
face normally accommodating a por-
tion of the key, and a spring biasing
the sleeve to a position adjacent the
front end of the body member, in

which position of the sleeve the margin is disposed in locking position, whereby retracting said sleeve against said spring bias will cause the camming surface to engage the key and slide the same in said guideway so as to unseat said margin from behind said shoulder and simultaneously pull the body member off the nipple.

"11. The combination claimed in claim 9, including a spring compressed beneath the inner end of the key and yieldably biasing it to locking position, and in which the camming surface fixed on the sleeve moves into sliding contact with the opposite, outer end of the key on retraction of the sleeve."

The references relied on are:

| Fogelberg | 1,534,173 | April 21, 1925 |
| Mandl | 2,108,866 | Feb. 22, 1938 |
| Ewald | 2,263,293 | Nov. 18, 1941 |
| Wiggins | 2,425,500 | Aug. 12, 1947 |

The appellant's application relates to a coupling member which is adapted to form a detachable connection by sliding over a bevel-ended nipple which is provided with a rearwardly facing shoulder. The coupling member is connected at one end to a hose or similar conduit and has a passage extending through it to the other end, which is designed to receive the beveled end of the nipple. The coupling contains a valve which is urged by a spring toward its closed position and is adapted to be engaged by the end of the nipple and moved into open position.

The feature to which the appealed claims are primarily directed is a key which is mounted for slidable movement in a guideway, transversely of the coupling, which engages behind the shoulder of the nipple when it enters the coupling so that the parts will be locked in coupled position. The key has a central opening which is large enough to receive the nipple which is flared toward the outer end of the coupling to engage and guide the beveled end of the nipple as the parts are moved into coupling position.

The key is biased by a spring located in a pocket in the coupling and tends to move to a position in which its central opening is out of register with the passage through the coupling. The portion of the key opposite the spring extends through a slot in the wall of the coupling and enters an internal groove in a sleeve which is slidably mounted on the outside of the coupling. The forward wall of this groove has a camming surface which, when the sleeve is moved rearwardly against the action of a spring, forces the key into a position in which its opening registers with the passage through the coupling member.

When the device is to be used the coupling member is telescoped over the nipple and as the latter enters the coupling member, its beveled end engages the flared opening in the key, thus forcing the key into its central position, in which the end of the nipple passes through it and engages the spring-pressed valve, which it forces into open position so that fluid communication through the parts is established. At the same time the key is moved by its spring into position behind the shoulder of the nipple, thus locking the parts together. When it is desired to uncouple the parts the outer sleeve is moved rearwardly of the coupling member, forcing the key into central position, and continued rearward movement of the sleeve then serves to withdraw the coupling from the nipple. This operation, as well as the engaging movement, may be effected by one hand and by a single continuous movement.

The patent to Ewald, which is the basic reference, shows a coupling member which is designed to slide detachably over a nipple having a beveled forward end and a rearwardly facing shoulder. The coupling member is

adapted to be secured to a fluid conduit at one end and to receive the nipple in telescoping engagement at the other, and it has a central passage containing a spring-pressed valve which is engaged by the end of the nipple and forced into open position when the parts are coupled. A key, generally corresponding to that of the appellant's application, is mounted in guide channels for movement transversely of the coupling.

The key has a central opening, considerably larger than the nipple, and is biased by a spring toward a position in which that opening is out of registry with the passage through the coupling member. The forward end of the opening in the key is not flared, but the end of the nipple is beveled to such an extent that it will force the key to its central position when the nipple is moved into the coupling member. The end of the key opposite the biasing spring passes through an opening in the wall of the coupling member and engages a push button which may be depressed to move the key to central position.

When the device is to be used the coupling member is telescoped over the nipple, whereupon the end of the nipple engages the key, forces it to central position, passes through the opening in the key and engages and opens the valve, thus establishing fluid communication through the parts. As this movement is completed, the key is moved by its spring into locking position behind the rearwardly facing shoulder of the nipple, so that the parts are held in coupled relation. When the parts are to be released the push button is depressed, thus moving the key to central position and permitting withdrawal of the nipple.

The patent to Wiggins discloses a coupling member which is adapted to fit slidably over a nipple having a rearwardly facing shoulder. The coupling member is provided, at the end which fits over the nipple, with spaced, pivotally mounted dogs which are adapted to engage behind the shoulder of the nipple when the parts are coupled together. The dogs are surrounded by a sleeve which is slidable on the coupling member and which is provided with surfaces adapted to engage the dogs so that they will be moved into position behind the shoulder of the nipple when the sleeve is moved forwardly, and will be disengaged from the shoulder when the sleeve is moved rearwardly. The sleeve is spring-biased toward its forward position and must be manually retracted to permit the dogs to ride over the shoulder when the parts are being coupled together.

The Fogelberg patent shows a coupling member adapted to slide onto a nipple having an annular groove. The sleeve is provided with a series of circumferentially spaced pins which extend radially through openings in the sleeve and are normally held in outwardly retracted position by springs. The outer ends of the pins are surrounded by a sleeve which is slidable on the coupling member which is provided with a camming surface, adapted to force the pins inward when the sleeve is moved forwardly, and to release them for outward movement under the influence of their springs when it is moved rearwardly. When the parts are to be coupled the sleeve is retracted so that the pins move to their outer positions and the coupling member is slid onto the nipple until the pins are opposite the groove therein, whereupon the sleeve is moved forwardly forcing the pins into the groove. The sleeve remains in forward position, holding the pins in the groove, as long as the parts are coupled.

The patent to Mandl shows a socket wrench having two telescoping parts, the inner part having a transverse passage containing a pin which is urged outwardly by a spring and is adapted to enter a transverse opening in the outer part to hold the parts in assembled position. The opening in the outer part also contains a plunger which, when depressed, engages the pin and forces it out of the opening so that the parts may be disengaged. The outer end of the plunger protrudes beyond the wall of the outer part and is cammed so that

it may be depressed by a sleeve which is slidably mounted on that part.

The appealed claims were rejected on Ewald in view of Wiggins. Ewald clearly discloses everything recited by the claims except the specific means for forcing the key of the coupling member into a position in which it will be released from behind the shoulder of the nipple. For that purpose Ewald employs a push button, which must be moved by an operation distinct from the uncoupling movement of the parts, whereas the appellant, as above explained, provides a sleeve which serves both to release the key and to uncouple the parts.

While the Wiggins patent does show a slidable sleeve for releasing locking members from behind the shoulder of a nipple, the arrangement is quite different from that of the appellant. Wiggins' sleeve engages the locking members when moved in either direction and serves to move them into locking position as well as out of it. As a consequence, while his parts can be uncoupled by a single rearward movement of the sleeve, it is necessary, in coupling the parts, to move the sleeve backward and the coupling member forward, thus requiring the use of both hands.

Moreover, in view of the essentially different nature of the two-directional camming action of the Wiggins sleeve upon pivoted dogs and the single-directional action of appellant's sleeve upon a reciprocating member, and in view of the fact that a complete modification of the patented structures would be necessary before their teachings could be combined, we are of the opinion that the proposed combination is not one which would suggest itself to a worker skilled in the art or which could be made without the exercise of invention.

The Fogelberg and Mandl patents were relied on only supplementally by the Patent Office tribunals, and are not thought to strengthen the rejection materially. While both of these patents show coupling devices in which a locking means is released by the camming action of a sleeve, it has not been asserted that either of them, without reference to the Wiggins patent, could be combined with Ewald to produce a structure satisfying the appealed claims; and it is not clear how either Fogelberg or Mandl would be of any substantial assistance to one seeking to combine the teachings of Ewald and Wiggins.

The appellant has designed a specific unitary coupling device having distinct advantages over the references on which the appealed claims were rejected and, while it may be true that the broad equivalent of each feature claimed can be found somewhere in the references, we are of the opinion that the idea of combining them in the particular manner claimed would not be obvious to one skilled in the art but would require the exercise of the inventive faculty. The two claims hereinbefore described are specific and fairly commensurate with the appellant's contribution to the art, and accordingly should be allowed.

The decision of the Board of Appeals is reversed.

Reversed.

JACKSON, Judge, retired, recalled to participate.